UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x
HARRIS JOHN,

                Plaintiff,

      - against -

P.O. MATTHEW LEWIS, Shield No. 25652,
and THE CITY OF NEW YORK,

                Defendants.
------------------------------------------------------x
HARRIS JOHN,

                Plaintiff,

      - against -

P.O. ANTHONY CANALE,
and THE CITY OF NEW YORK,

                Defendants.
------------------------------------------------------x

**MEMORANDUM & ORDER**
15-CV-5346 (PKC)

**MEMORANDUM & ORDER**
15-CV-6853 (PKC)

PAMELA K. CHEN, United States District Judge:

Plaintiff Harris John ("Plaintiff" or "John") brings this action pursuant to 42 U.S.C. § 1983 against Defendant Police Officers Matthew Lewis ("P.O. Lewis") and Anthony Canale ("P.O. Canale"), and the City of New York (the "City"), based on events relating to his arrests on October 8, 2012, and December 14, 2012. Plaintiff has filed two separate Complaints in this court: the first on September 16, 2015, against P.O. Lewis and the City (Dkt. 1 in No. 15–cv–5346 ("Compl. I")); and the second on December 2, 2015, against P.O. Canale and the City (Dkt. 1 in No. 15–cv–6853 ("Compl. II")). The two cases have been consolidated.[1]

Before the Court is Defendants' motion to dismiss both Complaints. For the reasons below, Defendants' motion is GRANTED in part and DENIED in part.

---

[1] *See* Minute Entry dated 1/6/2016 for No. 15–cv–6853.

## I.    THE FACTS[2]

### A.    Two Arrests and the Indictment

On or about October 8, 2012, P.O. Lewis stopped Plaintiff while he was walking on the street, searched him, and asked for identification.  (Compl. I ¶¶ 8–9, 11.)  The officer requested Plaintiff's identification for the claimed purpose of completing a stop and frisk report.  (Compl. I ¶ 11.)  P.O. Lewis then searched Plaintiff's wallet and arrested him for possession of forged credit cards (the "October Arrest").  (Compl. I ¶ 12.)  About two months later, on or about December 14, 2012, Plaintiff was arrested again (the "December Arrest"), this time by P.O. Canale.  (Compl. II ¶¶ 6, 10.)  At the time of this arrest, Plaintiff was riding as a passenger in a motor vehicle that P.O. Canale stopped for a traffic violation.  (Compl. II ¶ 6.)  P.O. Canale then conducted a full search of the vehicle, including the trunk.  (Compl. II ¶¶ 6–7.)  During the search, P.O. Canale found a bag containing gift cards in the trunk of the vehicle.  (Compl. II ¶ 8.) The driver of the car, Plaintiff, and another passenger were arrested.  (Compl. II ¶ 10.)

Plaintiff was prosecuted in Queens County Criminal Court in connection with both arrests, and was represented by Garnett H. Sullivan, Esq., the same counsel representing him in this civil case.  (Dkt. 21 ("Sullivan Decl.") ¶¶ 2–3, 5; Compl. I ¶ 14; Compl. ¶ 12.)  For his October Arrest, Plaintiff was charged in criminal complaint number 54141 with Criminal Possession of a Forged Instrument in the Third Degree pursuant to New York Penal Law ("NYPL") § 170.20.[3]  (Dkt. 21–1 at ECF 2.)[4]  For his December Arrest, Plaintiff was charged in

---

[2] The facts are taken from both Complaint I and II and other material that either Complaint incorporated by reference or of which the Court takes judicial notice.

[3] Though not relevant to the resolution of Defendants' motion, the Court notes that while the criminal complaint states that Plaintiff was charged with criminal possession of a forged instrument in the Third Degree (*see* Dkt. 21–1 at ECF 2), the arrest report states that Plaintiff

criminal complaint number 64839 with Criminal Possession of a Forged Instrument in the Second Degree.  (Dkt. 21–2.)

Plaintiff was then indicted under a single Indictment No. 483-2013 (the "Indictment" or "Indictment 483"), which contained, *inter alia*, fifty-one charges of Criminal Possession of a Forged Instrument in the second degree arising from *both* the October and December Arrests. (Dkt. 16–4.)  Of the fifty-one charges, only three of them related to his October Arrest.  (*Id.* at 4–5.)

### B.     State Criminal Proceeding

#### 1.     Suppression Hearing & State Court Decision

The Honorable Ira H. Margulis ("Judge Margulis") of the New York State Supreme Court held a three-day suppression hearing pertaining to the Indictment to determine whether there was any basis to suppress the evidence recovered from Plaintiff in connection with his two arrests.  (Dkt. 16–5.)  In a Decision and Order dated March 4, 2015 ("Suppression Order"), Judge Margulis held, *inter alia*, that "the stop, frisk, search, seizure, and arrest of [John on October 8, 2012] violated [his] rights", and granted Plaintiff's motion to suppress the items recovered on October 8, 2012, and any statements Plaintiff made at the time of the arrest.  (Dkt. 9–4 ("Suppression Order") at ECF 8–9.)  However, Judge Margulis found no basis to suppress the evidence recovered during the December Arrest and stated, "Officer Canale possessed probable cause to believe that evidence of criminal activity existed and therefore acted lawfully . . . ."  (*Id.* at ECF 10).

_____

was arrested for criminal possession of a forged instrument in the Second Degree (*see* Dkt. 16–1 at ECF 2.)

[4] Citations to "ECF" refer to the pagination generated by the Court's electronic docketing system and not the document's internal pagination.  All references to Dkt. pertain to No. 15–CV–5346 unless otherwise noted.

2.    Guilty Plea

Thereafter, on May 18, 2015, before the Honorable Michael Aloise ("Judge Aloise") of the New York State Supreme Court, the prosecutor made a motion to add a misdemeanor charge of Criminal Possession of a Forged Instrument in the Third Degree (NYPL § 170.25) and then from that charge offered a plea to Disorderly Conduct (NYPL § 240.20). (Dkt. 16–6 at 3–4; Sullivan Decl. ¶ 6.) Plaintiff, represented by Mr. Sullivan, pled guilty to disorderly conduct "with respect to [Indictment] 483" and was sentenced to time served. (Dkt. 16–6 at ECF 5.) Two certificates of dispositions were issued for the October and December Arrests. The certificate of disposition numbered 311519, which lists an arrest date of October 8, 2012, states that the case disposition is "covered by case on diff[erent] arrest 00483-2013." (Dkt. 16–2.) The certificate of disposition numbered 27354, which lists an arrest date of December 14, 2012, indicates that Plaintiff pled guilty to disorderly conduct on May 18, 2015.[5] (Dkt. 16–3.)

The parties dispute whether Plaintiff's guilty plea to Disorderly Conduct disposed all charges in Indictment 483. Plaintiff contends that his guilty plea did not pertain to the charges arising from the October Arrest. (Compl. I ¶ 18 (alleging that "plaintiff was not convicted of the charges brought against him or any lesser included offense.").) Plaintiff further alleges that, at the plea proceeding, the charges related to his December arrest were "dismissed upon motion of the prosecutor." (Compl. II ¶ 17.)[6]

---

[5] While the certificate of disposition numbered 27354 indicates that Plaintiff was sentenced to one year of conditional discharge, the transcript of the May 18, 2015 guilty plea hearing indicates that Plaintiff was sentenced to time served. (*Compare* Dkt. 16–3 *with* Dkt. 16–6 at ECF 3, l.22.)

[6] To the extent Plaintiff means to suggest that the charges stemming from the October Arrest were not dismissed after, and as a result of, his May 18, 2015 guilty plea, the Court rejects that suggestion, based on the criminal court records of which the Court takes judicial notice, as discussed below and *infra* at footnote 20.

## II.    PROCEDURAL HISTORY

Plaintiff filed his first Complaint in this court on September 16, 2015, against P.O. Lewis and the City (Compl. I), and his second Complaint on December 2, 2015, against P.O. Canale and the City (Compl. II).  In these two Complaints, Plaintiff originally asserted ten claims, eight of them against both individual Defendants.  These claims alleged violations of both federal and State constitutional law.  However, on June 3, 2016, Plaintiff voluntarily withdrew his malicious prosecution and State constitutional claims.[7]  Plaintiff's remaining claims between the two Complaints therefore are: (1) false arrest and false imprisonment; (2) unreasonable search and seizure; (3) violation of due process under the Fourteenth Amendment; (4) violation of the Equal Protection Clause under the Fourteenth Amendment; (5) malicious abuse of process (only as to P.O. Canale); and (6) municipal liability (only as to the City).

Defendants have moved to dismiss all of Plaintiff's remaining claims pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(6).  On January 30, 2017, Defendants filed a supplemental motion to dismiss.  On March 1, 2017, Plaintiff filed a response.

## DISCUSSION

## I.    COURT'S CONSIDERATION OF MATERIAL EXTRANEOUS TO THE COMPLAINT

Both parties have attached a number of exhibits to their memoranda of law, and request that the Court consider them in deciding Defendants' motion.  Of particular relevance is the additional information about Plaintiff's State criminal prosecution.  Defendants have filed, as exhibits, the following documents: (1) the arrest report pertaining to Plaintiff's October Arrest (Dkt. 16–1), (2) the certificate of disposition pertaining to Plaintiff's October Arrest (Dkt. 16–2), (3) the certificate of disposition pertaining to Plaintiff's December Arrest (Dkt. 16–3 at ECF 2),

---

[7] *See* Dkt. 13, 5/26/2016 Order in No. 15–cv–5346, and Dkt. 25 at 4.

(4) Indictment No. 483–2013 (Dkt. 16–4), (5) Judge Margulis' Suppression Order dated March 4, 2015 (Dkt. 9–4[8] or Dkt. 16–5), (6) the transcript of the May 18, 2015 plea hearing pertaining to Indictment No. 483–2013 (Dkt. 16–6), and (7) Waiver of Right to Appeal and Other Rights form executed by Plaintiff (Dkt. 18–1). Plaintiff has filed the criminal complaints for Plaintiff's October and December Arrests. (Dkt. 21–1, 21–2.) For the reasons explained below, the Court takes judicial notice of all the exhibits, but not for the truth of the matters asserted therein; rather, the Court considers only the existence and legal effect of these documents.

In determining the adequacy of a claim pursuant to Rule 12(b)(6), "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *See DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)). However, even if the complaint does not expressly cite a document, "the [C]ourt may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint." *Chambers*, 282 F.3d at 153; *see also L–7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (quoting *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004)); *Sira*, 380 F.3d at 67 (document not expressly cited in the complaint was "incorporated into the pleading because [it] was integral to [plaintiff's] ability to pursue" his cause of action). The Court may also take judicial notice of public records integral to the complaint but not attached to it, so long as the Court does not use such records to establish the truth of the matter asserted therein. *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007); *see also Williams v. Kellogg Co.*, 628 F. App'x. 59, 60 (2d Cir. 2016) (summary order) (noting that

---

[8] Although Defendants submitted the Suppression Order as Dkt. 16–5 with their motion, the submitted copy is missing a page. Thus, the Court refers to Dkt. 9–4, a copy of the Suppression Order filed earlier with Defendants' motion to consolidate cases.

the court may consider matters of which judicial notice may be taken in deciding a rule 12(b)(6) motion) (citation omitted); Fed. R. Evid. 201 ("The court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.").

Pursuant to these principles, the Court takes judicial notice of all documents submitted by the parties, but for a limited purpose. The Indictment and Suppression Order are clearly public records.[9] *See e.g., Bejaoui v. City of New York*, No. 13–CV–5667, 2015 WL 1529633, at *6 (E.D.N.Y. Mar. 31, 2015) (recognizing disagreement among district courts in the Second Circuit as to whether incident reports, arrest reports, and police complaints may be judicially noticed, but still taking notice of plaintiff's State court indictment and criminal court order to establish their existence and legal effect); *see also Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) ("A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." (quoting *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998))).

---

[9] Defendants also argue that the Indictment and Suppression Order were incorporated by reference in the Complaints. The Court disagrees. For a document "[t]o be incorporated by reference, the complaint must make 'a clear, definite and substantial reference to the documents.'" *Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria*, 265 F.R.D. 106, 123 (S.D.N.Y. 2010) (citation and quotation marks omitted). "Limited quotation from or reference to documents that may constitute relevant evidence in a case is not enough to incorporate those documents, wholesale, into the complaint." *Sira*, 380 F.3d at 67; *Looney v. Black*, 702 F.3d 701, 716 n.2 (2d Cir. 2012) ("Limited quotation does not constitute incorporation by reference." (quoting *Cosmas v. Hassett*, 886 F.2d 8, 13 (2d Cir. 1989)); *see also Williams v. Time Warner Inc.*, 440 F. App'x. 7, 9 (2d Cir. 2011) (summary order) ("A mere passing reference or even references, however, to a document outside of the complaint does not, on its own, incorporate the document into the complaint itself."). Neither Complaint explicitly refers to the Indictment or the Suppression Order, or quotes from them.

Regarding the other exhibits proffered by Defendants, they assert that the Court may consider them because they are "integral" to the Complaints and are also documents that are judicially noticeable. The Court, however, does not find any of these exhibits "integral" to Plaintiff's Complaints. The Second Circuit has cautioned, "mere notice or possession is not enough" to render a document "integral." *See Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 231 (2d Cir. 2016) (citing *Global Network Commc'ns, Inc.*, 458 F.3d at 156); *see also Chambers*, 282 F.3d at 153 (noting that a document is "integral" to the complaint when the complaint "relies heavily upon [the document's] terms and effect"); *Global Network Commc'ns,*, 458 F.3d at 156–57 (noting that where the "integral to the complaint" exception is recognized, the extrinsic document is usually a "contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls"). Here, it is far from clear that Plaintiff, in drafting the Complaints, "heavily relied" on all of exhibits Defendants submitted. *See Williams v. City of New York*, No. 14–cv–5123, 2015 WL 4461716 (S.D.N.Y. Jul. 21, 2015) ("A document is not 'integral' simply because its contents are highly relevant to a plaintiff's allegations . . . ."); *see also Allyn v. Rockland Cty.*, No. 12 CV 5022, 2013 WL 4038602, at *4 (S.D.N.Y. Jul. 30, 2013) (disregarding documents submitted on motion to dismiss where there was "no indication in the record that plaintiff relied on [them] in drafting the complaint"). Neither Complaint references any of these exhibits. *See Weaver v. City of N.Y.*, No. 13–cv–20, 2014 WL 950041, at *3 (E.D.N.Y. Mar. 11, 2014) (not finding arrest report "integral" to plaintiff's allegations, where complaint contained no reference to it). Moreover, "[e]ven if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document." *DiFolco*, 622 F.3d at 111 (quoting *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006) (quotation marks omitted)). That is not the case here. Plaintiff asserts that

the certificate of disposition relating to the October Arrest[10] "does not accurately reflect" the disposition of the October Arrest. (Dkt. 21 at ¶ 6.)

Moreover, although Defendants assert that "judicial notice may be taken of public records, including 'arrest reports, criminal complaints, indictments, and criminal disposition data,'" (*see* Dkt. 19 at 2 (citing *Awelewa v. New York City*, No. 11–cv–778, 2012 WL 601119, at *2 (S.D.N.Y. Feb. 23, 2012)), district courts disagree about the extent to which material related to an underlying criminal case should be considered when resolving 12(b)(6) motions with respect to false arrest claims. *See Alvarez v. Cty. of Orange, N.Y.*, 95 F. Supp. 3d 385, 397–98 (S.D.N.Y. 2015) (comparing cases); *see also Bejaoui*, 2015 WL 1529633, at *7 (hesitating to find that district courts can rely on arrest reports and other public records in deciding motion to dismiss, given disagreement in this district and absence of Second Circuit's explicit approval). The Second Circuit has noted that "[b]ecause the effect of judicial notice is to deprive a party of the opportunity to use rebuttal evidence, cross-examination, and argument to attack contrary evidence, caution must be used in determining that a fact is beyond controversy under Rule 201(b)." *Costello v. Flatman, LLC*, 558 F. App'x. 59, 61 (2d Cir. 2014) (summary order) (quoting *Int'l Star Class Yacht Racing Ass'n*, 146 F.3d at 70).

For these reasons, the Court takes judicial notice of the exhibits proffered by the parties not for the truth of the matters asserted in them, but only to establish their existence and legal effect, or to determine what statements they contain.[11] *Roth*, 489 F.3d at 509 ("If the court takes

---

[10] *See* Exhibit B to Defendants' Memorandum of Law (Dkt. 16–2).

[11] This means that the Court does not take judicial notice, as Defendants request, of certain alleged facts, such as Plaintiff "knowingly pled guilty to disorderly conduct in order to resolve and fully satisfy Indictment No. 483-2013," and the Indictment "was not dismissed before plaintiff pled guilty in satisfaction of same." *See Roth*, 489 F.3d at 509. However, the Court need not do so to reach the same result, *i.e.*, to conclude that Plaintiff's guilty plea to disorderly conduct was in satisfaction of all charges in the Indictment and resulted in the

judicial notice, it does so in order to determine what statements they contained—but . . . not for the truth of the matters asserted."); *U.S. v. Miller*, 626 F.3d 682, 687 n.3 (2d Cir. 2010) ("While we take judicial notice of the decisions handed down by the other courts in this case, . . . we do not pass on the merits of any of these decisions[.]"); *see also Garcia–Garcia v. City of New York*, No. 12 Civ 1302, 2013 WL 3832730, at *1 n.1 (S.D.N.Y. Jul. 22, 2013) (taking judicial notice of criminal complaints and indictments for the limited fact that plaintiff was arrested and charged with certain crimes).[12]

## II.    LEGAL STANDARD

Under Rule 12(b)(6) of the FRCP, a defendant may move for dismissal on the ground that the complaint "fail[s] to state a claim upon which relief can be granted."  To withstand a Rule 12(b)(6) motion, a complaint must plead sufficient facts "to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads

---

dismissal of both criminal matters, stemming from the October and December arrests, that were pending against Plaintiff at the time of his plea.  As discussed *infra*, those facts are established by the mere existence and legal effect of the Indictment and Certificates of Disposition.

At the same time, however, this means the Court does take judicial notice of statements made during Plaintiff's May 18, 2015 plea hearing—again, not for their truth, *i.e.*, that Plaintiff, in fact, committed the crime of disorderly conduct, that he was making his plea "voluntarily", or that there was or was not probable cause for Plaintiff's two arrests.  (Dkt. 16-6, Ex. F.)  Rather, as discussed *infra*, the Court considers these statements for their legal effect.  Thus, the legal effect of Judge Margulis's Suppression Order ruling that there was probable cause for the December Arrest collaterally estops Plaintiff from asserting a false arrest claim based on the absence of probable cause for that arrest.

[12] Because of the Court's limited consideration of the extraneous materials provided by the parties, the Court need not convert Defendants' motion to one for summary judgment.  *See Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 426 (2d Cir. 2008) ("Matters judicially noticed by the District Court are not considered matters outside the pleadings [for the purpose of conversion]" in holding that the district court did not err in declining to convert Appellee's Rule 12(b)(6) motion to a motion for summary judgment) (citing 5 Wright & Miller, Federal Practice & Procedure § 1366 & n.33 (3d ed. 2004))).

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal.* 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). In ruling on a 12(b)(6) motion, a court must accept the factual allegations set forth in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *See Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014). However, a complaint that "tenders 'naked assertion[s]' devoid of 'further factual enhancement'" will not suffice. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 555 U.S. at 557). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 668. Rather, "[f]actual allegations must be enough to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555. A complaint should be dismissed where a plaintiff has not "nudged [his] claims across the line from conceivable to plausible[.]" *Id.* at 570.

## III.     PLAINTIFF'S FEDERAL CLAIMS

Plaintiff brings his suit pursuant to 42 U.S.C. § 1983 ("Section 1983"), which provides a cause of action against a "person who, under color of any statute, ordinance, regulation, custom, or usage of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of [federal] rights established elsewhere." *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)); *see Bailey v. City of New York*, 79 F. Supp. 3d 424, 440 (E.D.N.Y. 2015). To state a claim under Section 1983, a plaintiff must plausibly allege "(1) that the defendants deprived him of a right 'secured by the Constitution or laws of the United States'; and (2) that they did so 'under color of state law.'" *Giordano v. City of New York*, 274 F.3d 740, 750 (2d Cir. 2001) (quoting *Am. Mfrs.*

*Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999)); *see Flynn v. James*, 513 F. App'x 37, 39 (2d Cir. 2013).

## A.     False Arrest

A Section 1983 claim for false arrest "derives from [the] Fourth Amendment right to remain free from unreasonable seizures, which includes the right to remain free from arrest absent probable cause."[13] *Jaegly v. Couch*, 439 F.3d 149, 151 (2d Cir. 2006) (citing *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996)); *see United States v. Valentine*, 539 F.3d 88, 93 (2d Cir. 2008) ("[A]n arrest [without a warrant] must be supported by probable cause or else it violates the Fourth Amendment."). "In analyzing § 1983 claims for unconstitutional false arrest, [courts] generally look[] to the law of the state in which the arrest occurred." *Dancy v. McGinley*, 843 F.3d 93, 107 (2d Cir. 2016) (quoting *Jaegly*, 439 F.3d at 151). Under New York law, a plaintiff must establish, *inter alia*, that "the defendant intentionally confined him without his consent and without justification." *Id.* (quoting *Weyant*, 101 F.3d at 852); *see also Ackerson v. City of White Plains*, 702 F.3d 15, 19 (2d Cir. 2012) (citing *Broughton v. State of New York*, 37 N.Y.2d 451, 456 (1975)). The existence of probable cause to arrest "is a complete defense to an action for false arrest." *Weyant*, 101 F.3d at 852 (quoting *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994)); *see also Dancy*, 843 F.3d at 107 (citing *Jaegly*, 439 F.3d at 152). An officer has probable cause to arrest when he has "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested *has committed* or *is committing a crime*." *Gonzalez v. City of*

---

[13] Plaintiff also alleges a false imprisonment claim under Section 1983. However, the Court does not address this claim separately, because pursuant to New York law, false arrest and false imprisonment are "synonymous." *Posr v. Doherty*, 944 F.2d 91, 96 (2d Cir. 1991); *see also Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995) ("false arrest is a species of false imprisonment" and requires the plaintiff to prove the same elements).

*Schenectady*, 728 F.3d 149, 155 (2d Cir. 2013) (emphasis in original) (quoting *Weyant*, 101 F.3d at 852). "Therefore, '[w]hether an officer is authorized to make an arrest ordinarily depends, in the first instance, on state law.'" *Dancy*, 843 F.3d at 107 (alteration in original) (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 36 (1979)).

Defendants contend that Plaintiff's false arrest and unreasonable search and seizure claims should be dismissed because the claims are barred under (1) *Heck v. Humphrey*, 512 U.S. 477 (1994), (2) the doctrine of collateral estoppel (as to the December Arrest and P.O. Canale only), and (3) the common law defense of conviction. While the Court does not find that Plaintiff's claims are barred under *Heck*, it finds that Plaintiff's false arrest and unreasonable search and seizure claims are precluded under the doctrine of collateral estoppel as to P.O. Canale and under the common law defense of conviction as to P.O. Lewis.

        1.      *Heck* Bar

Defendants assert that Plaintiff's false arrest claims are barred by *Heck*. In *Heck*, the Supreme Court affirmed the dismissal of plaintiff's Section 1983 claims, explaining that, when the success of such claims "require[s] the plaintiff to prove the unlawfulness of his conviction or confinement," the complaint must be dismissed unless the plaintiff can "prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Id.* at 486–87. Defendants argue that Plaintiff may not proceed on his false arrest claims without implying the invalidity of his conviction. Plaintiff simply replies that "a judgment in favor of plaintiff in this action would not necessarily imply the

invalidity of plaintiff's disorderly conduct conviction given the circumstances of that plea."[14] (Dkt. 20 at 6.)  Both parties, however, overlook a critical point.

It is Second Circuit law that a plaintiff not in State custody, who thus does not have a *habeas corpus* remedy available, may bring a § 1983 action, even if a successful claim would "necessarily imply the invalidity of his conviction." *Leather v. Eyck*, 180 F.3d 420, 424 (2d Cir. 1999).  In *Leather*, the court held that *Heck* did not bar an arrestee's Section 1983 suit when the arrestee was convicted for driving while impaired and was only fined rather than imprisoned.  *Id.* at 422.  The court reasoned, "[b]ecause Leather is not and never was in the custody of the State, he . . . has no remedy in *habeas corpus*.  Having escaped the jaws of *Heck*, Leather should therefore be permitted to pursue his § 1983 claim in the district court."  *Id.* at 424.  A year after deciding *Leather*, the Second Circuit further explained that "*Heck* acts only to bar § 1983 suits when the plaintiff has a habeas corpus remedy available to him (*i.e.*, when he is in state custody). . . . Because it does not appear that [plaintiff] is presently in state custody, his § 1983 action is not barred by *Heck*."  *Green v. Montgomery*, 219 F.3d 52, 60 n.3 (2d Cir. 2000); *see also Huang v. Johnson*, 251 F.3d 65, 75 (2d Cir. 2001) ("In light of our holding in *Leather*, and in light of both the *Spencer* majority's dictum and the fact that the *Spencer* concurrences and dissent 'revealed that five [Supreme Court J]ustices hold the view that, where federal habeas corpus is not available to address constitutional wrongs, § 1983 must be,' we conclude that [the plaintiff's] Section 1983 claim must be allowed to proceed." (quoting *Jenkins v. Haubert*, 179 F.3d 19, 26 (2d Cir. 1999)).

---

[14] Plaintiff's discussion of this case reveals that he is conflating the issue of whether his claims are barred by *Heck* with the issue of whether the common law conviction defense bars his claims.

Here, there is no evidence that Plaintiff is currently incarcerated, and thus the Court can infer that Plaintiff is not "in custody." Therefore, *Heck* does not bar Plaintiff's Section 1983 claims. *See, e.g., Chillemi v. Town of Southhampton*, 943 F. Supp. 2d 365, 375 (E.D.N.Y. 2013) (noting that "Section 1983 remains a possible remedy when there is no other federal avenue through which to bring a claim" and finding that *Heck* did not bar plaintiff's claims); *Hope v. City of New York*, No. CV–08–5022, 2010 WL 331678, at *2 (E.D.N.Y. Jan. 22, 2010) (finding its prior reliance on *Heck* in dismissing § 1983 claims to be erroneous where plaintiff had spent no time in custody); *see also Houston v. City of New York*, No. 06–CV–2094, 2013 WL 1310554, at *3 (E.D.N.Y. Mar. 28, 2013) (noting that the court need not consider whether plaintiff's claims are barred by *Heck* because plaintiff was never in custody for that charge); *Barmapov v. Barry*, No. 09–CV–3390, 2001 WL 32371, at *4 (E.D.N.Y. Jan. 5, 2011) ("[T]here is no evidence that Plaintiff is currently incarcerated . . . . Thus, *Heck* does not preclude Plaintiff from advancing claims against Defendant in a § 1983 action because Plaintiff cannot challenge his conviction through a habeas petition.").

Accordingly, the Court finds *Heck* to be inapplicable here and does not bar Plaintiff's Section 1983 claims.

### 2. Collateral Estoppel Effect of the Suppression Order

Defendants also argue that collateral estoppel applies to Plaintiff's false arrest claim arising out of his December Arrest, *i.e.*, the false arrest claim against P.O. Canale, because the issues raised in those claims were fully litigated in Plaintiff's State court criminal suppression hearing. (Dkt. 17 at 13–14.) The Court agrees.

"Collateral estoppel, or issue preclusion, prevents parties or their privies from relitigating in a subsequent action an issue of fact or law that was fully and fairly litigated in a prior proceeding." *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 288 (2d Cir. 2002). Under 28

U.S.C. § 1738, "issues actually litigated in a state-court proceeding are entitled to the same preclusive effect in a subsequent federal § 1983 suit as they enjoy in the courts of the State where the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. of Educ*, 465 U.S. 75, 83 (1984) (citing *Allen v. McCurry*, 449 U.S. 90 (1980)). As the Supreme Court explained in *Allen*, "nothing in the legislative history of § 1983 reveals any purpose to afford less deference to judgments in state criminal proceedings than to those in state civil proceedings", and there is "no reason to believe that Congress intended to provide a person claiming a federal right an unrestricted opportunity to relitigate an issue already decided in state court simply because the issue arose in a state proceeding in which he would rather not have been engaged at all". 449 U.S. at 104. Therefore, the Court considers whether under New York law, Plaintiff's false arrest claim with respect to the December Arrest would be barred by the findings made by Judge Margulis in the Suppression Order in Plaintiff's underlying criminal prosecution.

"Under New York law, collateral estoppel will preclude a federal court from deciding an issue if '(1) the issue in question was actually and necessarily decided in a prior proceeding, and (2) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the first proceeding.'" *McKithen*, 481 F.3d 89, 105 (2d Cir. 2007) (quoting *Vargas v. City of New York*, 377 F.3d 200, 205–06 (2d Cir. 1995)); *Reddy v. Catone*, 630 F. App'x. 120, 121 (2d Cir. 2015) (summary order) (quoting *McKithen*, 481 F.3d at 105); *see also Curry v. City of Syracuse*, 316 F.3d 324, 331 (2d Cir. 2003) ("[C]ollateral estoppel prevents a party from relitigating an issue decided against that party in a prior adjudication. It may be invoked to preclude a party from raising an issue (1) identical to an issue already decided (2) in a previous proceeding in which that party had a full and fair opportunity to litigate." (citation and quotation marks omitted)). "Additionally, the issue that was raised previously must be decisive of the

present action." *Curry*, 316 F.3d at 331 (quoting *LaFleur v. Whitman*, 300 F.3d 256, 271 (2d Cir. 2002)); *see also Jenkins v. City of New York*, 478 F.3d 76, 85 (2d Cir. 2007) ("[C]ollateral estoppel has two essential elements. 'First, the identical issue necessarily must have been decided in the prior action and be decisive of the present action, and second, the party to be precluded from relitigating the issue must have had a full and fair opportunity to contest the prior determination.'" (quoting *Juan C. v. Cortines*, 89 N.Y.2d 659, 667, 657 N.Y.S.2d 581 (N.Y. 1997)). Third-parties may raise collateral estoppel against a party who has fully and fairly litigated an issue, to prevent that party from raising the same issue in a subsequent lawsuit. *See Austin v. Downs, Rachlin & Martin*, 270 F. App'x 52, 54 (2d Cir. 2008) (summary order) ("Under non-mutual collateral estoppel, if a litigant has had an opportunity to fully and fairly litigate an issue and lost, then third parties unrelated to the original action can bar the litigant from relitigating that same issue in a subsequent suit."); *see also Lipin v. Hunt*, No. 14–CV–1081, 2015 WL 1344406, at *5 (S.D.N.Y. Mar. 20, 2015). "The party seeking the benefit of collateral estoppel has the burden of demonstrating the identity of the issues[,] . . . whereas the party attempting to defeat its application has the burden of establishing the absence of a full and fair opportunity to litigate the issues." *Constantine v. Teachers College*, 448 F. App'x. 92, 93 (2d Cir. 2011) (summary order) (quoting *Evans v. Ottimo*, 469 F.3d 278, 281–82 (2d Cir. 2006)).

a)    Identity of Issues

Here, the issue to be litigated with respect to Plaintiff's false arrest and unreasonable search claims is identical to the issue Plaintiff previously litigated as a defendant in his State court criminal proceeding, namely, whether there was probable cause for the December Arrest. In order for Plaintiff to succeed on his Section 1983 false arrest or illegal search claims against P.O. Canale, he must establish that there was no probable cause for his arrests, which is precisely

the issue litigated before Judge Margulis at Plaintiff's suppression hearing.[15]  Judge Margulis found no basis to suppress the evidence recovered from the December Arrest because "Officer Canale possessed *probable cause* to believe that evidence of criminal activity existed and therefore acted lawfully[.]"  (*Id.* at ECF 10 (emphasis added).)  Contrary to Plaintiff's assertion that the "the court never ruled that plaintiff's arrest was lawful," (Dkt. 20 at 7), the Suppression Order states, "[T]he court finds that the *search* of [the automobile in which Plaintiff was riding] incident to the vehicular stop *and then the occupants' arrest* for the open container of alcohol and the fraudulent credit cards was in all respects proper."  (Suppression Order at ECF 10 (emphases added).)[16]  In short, the Suppression Order actually and necessarily decided the issue of probable cause and the legality of Plaintiff's December arrest and search.

b)      Full and Fair Opportunity

Collateral estoppel applies only if the party to be precluded from bringing the claim "had a 'full and fair opportunity' in New York state court to litigate the issues that they now seek to relitigate in federal court."  *Hickerson v. City of New York*, 146 F.3d 99, 109 (2d Cir. 1998) (citing *In re Sokol*, 113 F.3d 303, 306 (2d Cir. 1997) and *Ryan v. new York Tel. Co.*, 478 N.Y.S.2d 823, 826 (1984)); *see also Reddy*, 630 F. App'x. at 121 (citing *McKithen*, 481 F.3d at 105).  As previously noted, "[p]laintiffs, as the parties opposing the application of collateral estoppel, bear the burden of proving that they were denied this full and fair opportunity."

_____

[15] The Suppression Order states that Judge Margulis held a *Huntley/Dunaway/Mapp* hearing on February 4, May 2, and November 5, 2014.  (Suppression Order at ECF 2.)

[16] Judge Margulis' additional finding that Plaintiff had no standing to contest the search of the vehicle on December 14, 2012, or the evidence that was recovered because he was merely a passenger in the vehicle with no expectation of privacy does not diminish the court's finding of probable cause to stop and search and arrest Plaintiff.  The court went on to state, "In any event, in accordance with the conclusions stated above[,] the court finds that even if the defendant has standing to contest the seizure of property recovered on December 14, 2012 that the evidence was lawfully and properly recovered by the police."  (Suppression Order at ECF 10–11.)

*Hickerson*, 146 F.3d at 109 (citing, *inter alia*, *Kaufman v. Eli Lilly & Co.*, 492 N.Y.S.2d 584, 588 (1985)); *see also Constantine*, 448 F. App'x at 93.[17]  The Second Circuit has explained that

> In determining whether a party had a full and fair opportunity to litigate the issue, the New York Court of Appeals has instructed that "the various elements which make up the realities of litigation," should be explored, including "the size of the claim, the forum of the prior litigation, the use of initiative, the extent of the litigation, the competence and experience of counsel, the availability of new evidence, indications of a compromise verdict, differences in the applicable law and foreseeability of future litigation."

*Curry*, 316 F.3d at 332 (quoting *Kosakow v. New Rochelle Radiology Assocs., P.C.*, 274 F.3d 706, 734 (2d Cir. 2001)).

It is abundantly clear that Plaintiff had a full and fair opportunity to litigate the issues of probable cause and the legality of the stop, search, and arrest of Plaintiff during his State court suppression hearing.  Represented by his current counsel, Plaintiff filed a motion to suppress all evidence recovered by police officers from Plaintiff's October and December Arrests.  (*See* Sullivan Decl. ¶ 5; Suppression Order at ECF 2.)  Judge Margulis held a three-day suppression hearing and "granted the parties leave to file memoranda of law in support of their positions." (Suppression Order at ECF 2.)  The prosecution introduced evidence through P.O. Lewis and P.O. Canale, and Plaintiff called a private investigator as a witness.  (*Id.*)  Plaintiff clearly had a strong "incentive and initiative to litigate," *Hickerson*, 146 F.3d at 109, the issue of probable cause for his December arrest and search.  Since forty-eight out of fifty-one counts in the Indictment related to Plaintiff's December Arrest, Judge Margulis's decision on the motion to

---

[17] In spite of bearing the burden of establishing the absence of a full and fair opportunity to litigate issues, Plaintiff does not contest that he had a full and fair opportunity to litigate those issues.  Nevertheless, out of an abundance of caution, the Court examines this issue.

suppress would have had a significant impact on the strength of the prosecution's case against Plaintiff.[18]

Accordingly, the Court finds that Plaintiff had a full and fair opportunity to litigate the issue of probable cause for his December arrest and search before Judge Margulis. *Curry*, 316 F.3d at 332 (finding that plaintiff who brought Section 1983 false arrest and excessive force claims had full and fair opportunity to litigate same issue at parole violation hearing because, at the hearing, plaintiff was represented by competent counsel, had a strong incentive and initiative to litigate, knowing that the resolution of the issue would almost certainly result in his incarceration, and had the opportunity to call witnesses, testify himself, and present evidence).

### c) "Decisive" Issue in the Present Action

The third requirement under New York law, that the issue previously decided be "decisive" of the current action, is also met in this case. "An issue is 'decisive in the present action' if it would prove or disprove, without more, an essential element of any of the claims set forth in the complaint." *Evans*, 469 F.3d at 283 (quoting *Curry*, 316 F.3d at 331–32); *see also Jenkins*, 478 F.3d at 85 (noting that for collateral estoppel to apply, an identical issue decided in the prior action must be decisive of the present action). Whether there was probable cause to

---

[18] The Second Circuit has held that if a defendant's motion to suppress is denied but then the defendant is acquitted at trial, that defendant has not had a "full and fair opportunity" to challenge the suppression hearing, because "appellate review of a suppression determination in a prior proceeding was foreclosed by an acquittal," and thus the defendant is not collaterally estopped in a Section 1983 action. *Johnson v. Watkins*, 101 F.3d 792, 795–96 (2d Cir. 1996). However, this reasoning is inapplicable to this case because Plaintiff's opportunity to challenge the suppression ruling was not foreclosed due to an acquittal, but by his own guilty plea to disorderly conduct. *See Hayes v. Sullivan*, 853 F. Supp. 2d 400, 427 n.25 (S.D.N.Y. 2012); *see also Grullon v. Reid*, No. 97–CV–7616, 1999 WL 436457, at *5 (S.D.N.Y. June 24, 1999) (holding that plaintiff's Fourth Amendment claims were collaterally estopped by the denial of the same claims at his suppression hearing and explaining that he "cannot avoid the estoppel effect of the suppression hearing by alleging that the criminal action arising out of the . . . investigation was not fully litigated" because of his guilty plea), *aff'd sub nom.*, 22 F. App'x 70 (2d Cir. 2001).

arrest and search Plaintiff in connection with the December Arrest are decisive issues in the instant case because, as previously noted, the existence of probable cause is a complete defense to a false arrest claim. *See Weyant*, 101 F.3d at 852.

*          *          *

In sum, because Judge Margulis' Suppresion Order held that there was probable cause for Plaintiff's December Arrest and for the searches conducted during that arrest, Plaintiff is collaterally estopped from relitigating those issues against P.O. Canale in this case. *See Reyes v. City of New York*, No. 10–CV–1838, 2012 WL 37544, at *4 (E.D.N.Y. Jan. 9, 2012) (applying collateral estoppel to dismiss § 1983 false arrest action because "plaintiff previously challenged his arrest in a pre-trial motion in state court, arguing the police lacked probable cause to arrest"); *Hayes v. Cty. of Sullivan*, 853 F. Supp. 2d 400, 426–27 (S.D.N.Y. 2012) ("Settled authority establishes that where, as here, a state court has determined that the . . . warrantless [search or] seizure was supported by probable cause, the defendant may not relitigate that determination in a federal Section 1983 action." (citation and quotation marks omitted)); *see also Mitchell v. Hartnett*, 262 F. Supp. 2d 153, 155 (S.D.N.Y. 2003); *Perlleshi v. Cty. of Westchester*, No. 98–CIV–6927, 2000 WL 554294, at *4 (S.D.N.Y. Apr. 24, 2000). Accordingly, the Court grants Defendants' motion to dismiss Plaintiff's false arrest claim against P.O. Canale based on the December Arrest.

The Court next examines whether Defendants' common law defense warrants dismissing the false arrest claim against P.O. Lewis in connection with the October Arrest.

### 3.    Common Law Defense of Conviction

In *Cameron v. Fogarty*, 806 F.2d 380 (2d Cir. 1986), the Second Circuit held that even though a conviction does not always preclude a claim for false arrest under principles of *res judicata* or collateral estoppel, the "common law defense of conviction" to a false arrest claim

21

provides immunity to the arresting police officer. *Id.* at 386–89. The court explained that where a civil rights plaintiff has been convicted of the offense for which he was arrested, that conviction is conclusive evidence that probable cause existed for an arrest and is a "complete defense" to a false arrest claim. *Id.* at 388 (finding that "a conviction of the plaintiff following the arrest is viewed as establishing the existence of probable cause" (citing *Broughton v. State*, 37 N.Y.2d 451, 458 (1975)); *see Johnson v. City of New York*, 551 F. App'x 14, 15 (2d Cir. 2014) (citing *Cameron*). Courts apply the principles enunciated in *Cameron* even when the conviction was the result of a guilty plea to a lesser offense, such as disorderly conduct. *See, e.g., Timmins v. Toto*, 91 F. App'x 165, 166 (2d Cir. 2004) (summary order) ("[I]n this Circuit, a plaintiff cannot establish any [false arrest or malicious prosecution] claim if he pleads guilty to a lesser offense pursuant to a plea agreement." (citing *Maietta v. Artuz*, 84 F.3d 100, 102 n.1 (2d Cir. 1996)); *Hope*, 2010 WL 331678, at *2 ("A valid prosecution resulting in conviction is conclusive evidence that probable cause existed for an arrest, *even if the conviction is the result of a guilty plea to a lesser charge than that for which plaintiff was arrested*." (emphasis added)); *Roundtree v. City of New York*, 778 F. Supp. 614, 619–20 (E.D.N.Y. 1991) (dismissing a false arrest claim where plaintiff was arrested for possession of cocaine and pled guilty to lesser offense of disorderly conduct); *Williams v. City of New York Police Dep't.*, No. 06 Civ. 6053, 2007 WL 2462669, at *1 (E.D.N.Y. Aug. 27, 2007) (finding that plaintiff's plea to disorderly conduct "conclusively establishes that there was probable cause for his arrest").

Defendants assert that the common law defense of conviction applies because Plaintiff pled guilty to disorderly conduct in full satisfaction of the Indictment, which covered both the October and December Arrests. Plaintiff counters that because he was not convicted of any

charge or "lesser included offense"[19] stemming from his October Arrest, the common law

defense of conviction does not bar his false arrest claim for that October Arrest. Thus, the issue

presented here is: does a guilty plea to a single charge "in satisfaction of" charges arising out of

two separate arrests count as a conviction to all charges so as to bar false arrest claims as to both

arrests?[20] While neither party has cited any authority specifically addressing this situation, the

---

[19] The Court notes that Plaintiff incorrectly conflates "lesser included offense", a term that is statutorily defined in the criminal context, with "lesser offense", the term used in *Cameron*. Although cases applying *Cameron* have been inconsistent in this regard, *compare Hope*, 2010 WL 331678, at *2 (referring to "lesser charge") *with Jones v. Rivera*, 13-cv-1042, 2015 WL 8362766, at *4 (S.D.N.Y. Dec. 7, 2015) (referring to "lesser-included offenses"), this Court interprets the reference to "lesser offense" in *Cameron* to mean *any* offense that carries a less severe penalty than the crimes with which the defendant was initially charged, regardless of whether the crime qualifies as a "lesser *included* offense". Under New York law, a "lesser included offense" is defined as follows:

> When it is impossible to commit a particular crime without concomitantly committing, by the same conduct, another offense of lesser grade or degree, the latter is, with respect to the former, a "lesser included offense." In any case in which it is legally possible to attempt to commit a crime, an attempt to commit such crime constitutes a lesser included offense with respect thereto.

N.Y. Crim. Proc. Law § 1.20 (McKinney). Courts routinely apply the conviction defense to guilty pleas for offenses that do not qualify as "lesser included offenses" of the originally charged crimes. *See, e.g.*, *Roundtree*, 778 F. Supp. at 619 (dismissing false arrest claim where plaintiff was arrested for possession of cocaine and pled guilty to disorderly conduct); *McLennon v. City of New York*, 171 F. Supp. 3d 69, 92 (E.D.N.Y. 2016) (dismissing plaintiff's false arrest claim where plaintiff pled guilty to disorderly conduct in full satisfaction of New York Vehicle and Traffic Law infractions); *see Evans v. City of N.Y.*, No. 12-CV-5341, 2015 WL 1345374, at *32–33 (E.D.N.Y. Mar. 25, 2015) (finding the "traffic infraction charges are not lesser included offenses of the disorderly conduct charge").

[20] Notwithstanding Plaintiff's argument that he did not plead guilty to any crime arising out of the October Arrest, it is clear that Plaintiff's disorderly conduct plea was "in full satisfaction" of all charges pending against him in the Indictment. As previously discussed, the Court has taken judicial notice of, *inter alia*, the Indictment and two Certificates of Disposition from Plaintiff's underlying criminal case. Even limiting its consideration of these court records to their existence and legal effect, the Court can readily conclude that Plaintiff's guilty plea disposed of all charges in the Indictment, including those arising out of the October Arrest. The Indictment contained three charges stemming from the October Arrest (Dkt. 16-4, Ex. D at 4–5),

Court finds that the reasoning behind *Cameron* supports the application of the common law defense of conviction[21], which the Court will refer to as the "conviction defense", to bar Plaintiff's false arrest claim as to his October Arrest.

In *Cameron*, the Second Circuit explained that incorporation of the conviction defense into Section 1983 doctrine is "the proper accommodation between the individual's interest in preventing unwarranted intrusions into his liberty and society's interest in encouraging the apprehension of criminals"; hence, the court's holding that the conviction defense applies if the plaintiff "was convicted of the offense *for which he was arrested*." 806 F.2d at 388-89 (emphasis added). As discussed, over time, the conviction defense has been expanded, so as not to require that the defendant pled guilty to the actual offense for which he was arrested, but simply to a "lesser offense", in satisfaction of all charges pending from that arrest. *See Timmins*,

and following Plaintiff's guilty plea, the two Certificates of Disposition were issued and docketed. The *existence* of those certificates, which were filed in Plaintiff's two cases arising from the October and December arrests unequivocally indicates that *both* cases were disposed of, and the *effect* of those certificates was to dispose of *both* of Plaintiff's pending cases, which included the charges stemming from his October Arrest. *See Daniels v. Bonilla*, No. 14–CV–3017, 2015 WL 4894683, *4 n.8 (E.D.N.Y. Aug. 17, 2015) (taking judicial notice of certificate of disposition for purpose of recognizing that plaintiff's prosecution resulted in conviction). Although Plaintiff asserts that Defendant's Exhibit B (Certificate of Disposition for the October Arrest) "does not accurately reflect the disposition of the arrest of October 8, 2012[,] since that matter was not resolved in the Queens County Criminal Court on May 3, 2013, Part AP5, before the Hon. G. Lopez" (Sullivan Decl. ¶ 7), at the same time, he also asserts that "Indictment no. 483/2013 was disposed of on May 18, 2015 in Queens County Supreme Court, Part K-3 before the Hon. Michael Aloise" (*id.* ¶ 5). Regardless of which judge was listed on the Certificates of Dispositions, Plaintiff admits that the effect of his guilty plea was to dispose of all charges in the Indictment. Indeed, Plaintiff certainly cannot, in good faith, allege that the criminal case or charges stemming from his October Arrest were not dismissed following, and because of his, disorderly conduct plea.

[21] The Court notes that Plaintiff seems to misunderstand the holding in *Cameron*, as reflected by Plaintiff's statement in his opposition that *Cameron* "applied collateral estoppel principles to bar false arrest suits . . . ." (Dkt. 20 at 7.) This is incorrect. In fact, *Cameron* found the opposite: "the litigation in the present lawsuit of the existence of probable cause to arrest [the plaintiff] . . . is *not* barred by principles of collateral estoppel." 806 F.2d at 385 (emphasis added).

91 F. App'x at 166; *Chillemi*, 943 F. Supp.2d at 377 ("[I]n this Circuit a plaintiff cannot establish any such claim [of false arrest] if he pleads guilty to a lesser offense pursuant to a plea agreement." (quoting *Timmins*, 91 F. App'x. at 166).

This approach is consistent with the rationale behind *Cameron*. Where a plaintiff pleads to a single charge in satisfaction of multiple charges, all arising out of the same arrest, the rationale of *Cameron* is met because there is still only one arrest, *i.e.*, one intrusion into the plaintiff's liberty. The "accommodation" between the individual defendant's liberty interest and society's interest in apprehending criminals is still in balance. However, that reasoning breaks down to an extent where the charges that are disposed of by the guilty plea arose out of more than one arrest, and thus more than one intrusion into the plaintiff's liberty. When multiple arrests give rise to the charges pending against a defendant, his guilty plea "in satisfaction of" those charges does not clearly support the legal construct that the conviction defense is premised on, *i.e.*, that there was probable cause for *the* arrest giving rise to all of those charges. In a case involving multiple arrests, the "accommodation" that *Cameron* sought to achieve between the arrestee's liberty interest and society's interest in apprehending criminals, theoretically, is no longer equally balanced.

However, as scant as the case law on this particular issue is, it supports the conclusion that where a defendant pleads guilty "in satisfaction", *i.e.*, to dispose, of other charges, whether those charges stem from one arrest or more than one arrest, the defendant's plea bars a false arrest claim for any arrest from which the disposed-of charges arose. *See Horvath v. City of New York*, No. 12–CV–6005, 2015 WL 1757759, at *3 (E.D.N.Y. Apr. 17, 2015) (finding that defendant's plea to single count of disorderly conduct "in full satisfaction" of charges stemming from two separate arrests in two separate dockets established probable cause for both arrests);

*Gordon v. City of New York*, 10–CV–5148, 2012 WL 1068023, at *5 (E.D.N.Y. Mar. 29, 2012)

(finding that plaintiff's guilty plea barred false arrest claim not only as to the arrest immediately

preceding his conviction, but also as to the earlier "unfruitful" arrest for the same conduct)[22]; *see*

*also Desir v. Desena*, No. 11–CV–0368, 2013 WL 678186, at *3 (E.D.N.Y. Feb. 24, 2013)

(applying *Cameron* while finding that "[plaintiff] pled guilty, albeit not to a charge for which he

was arrested"); *Wang v. Vahldieck*, No. 09–CV–3783, 2012 WL 119591, at *4 (E.D.N.Y. Jan. 9,

2012) (noting that plaintiff's guilty plea, "even if different from the charge for which she was

arrested, necessarily 'preclud[ed] recovery under § 1983 for false arrest . . . .'" (citation and

quotation marks omitted));[23] *Lluberes v. City of Troy*, 11-CV-1346, 2014 WL 1123413, at *15

(N.D.N.Y. Mar. 21, 2014) (applying *Heck* doctrine and finding plaintiff's guilty plea to one

count of disorderly conduct "in full satisfaction" of charges stemming from two arrests

[22] The Court recognizes that *Horvath* and *Gordon* are factually distinguishable from this case, but these distinctions do not diminish the applicability of their conclusion that a guilty plea to a single charge that disposes of charges from two arrests establishes probable cause for both arrests. *See Horvath*, 2015 WL 1757759, at *3 (where charges from plaintiff's two arrests were set forth in two distinct complaints and dockets—and never combined into a single indictment— court found that plaintiff's guilty plea "'on each docket' to disorderly conduct 'in full satisfaction of' pending charges" barred his false arrest claims for *both* arrests); *Gordon*, 2012 WL 1068023, at *5 (where plaintiff was arrested twice for same conduct, with charges only resulting from second arrest, court found that guilty plea established probable cause for both arrests).

[23] The Court recognizes that some courts have applied *Cameron* only if the plaintiff pleads guilty to the offense for which he was arrested. *See, e.g., King v. City of New York*, Nos. 99 CV 3669, 05 CV 3247, 2007 WL 959696, at *10 (E.D.N.Y. Mar. 30, 2007) (rejecting defendant's argument that plaintiff's false arrest claim was barred under *Cameron* noting that plaintiff's version of the facts was that he was arrested for causing a disturbance and not for the robbery to which he ultimately pled guilty); *Spillman v. City of Yonkers*, No. 07 Civ. 2164, 2010 WL 86139, at *6 (S.D.N.Y. Jan 8, 2010) ("The *Cameron* doctrine applies when a plaintiff is convicted for at least one of the offenses for which he was arrested."); *see also Kent v. Katz*, 312 F.3d 568, 578 (2d Cir. 2002) (Newman, J., concurring) ("[B]ecause *Cameron* so explicitly stated that the conviction defense applies where a person has been convicted of the crime for which he was arrested, I agree that [plaintiff's] conviction for careless and negligent operation of a motor vehicle[, for which plaintiff was not arrested] does not preclude his claim for false arrest on the DWI charge.").

constituted probable cause as to both arrests); *accord Feurtado v. Gillespie*, No. 04 CV 3405, 2005 WL 3088327, at *6 (E.D.N.Y. Nov. 17, 2005) (applying *Heck* and barring false arrest claim where first indictment dismissed due to tainted evidence was "inextricably intertwined" with the second indictment which resulted in a guilty plea and where the second indictment contained the three crimes originally included in the first indictment). Language in *Cameron* supports this approach:

> The fact of conviction means that the plaintiff was not entitled to escape arrest entirely and that the arrest was simply premature. Though the right to be free from arrest without probable cause is substantial, the injury caused solely by prematurity of arrest is, of itself, insubstantial. It is of course possible that, incident to the premature arrest, the officers will have seized evidence that incriminates the person arrested, and that this could result in more than negligible injury. But the law seeks to forestall the possibility of real injury by forbidding the use of any such evidence against the accused at his criminal trial.

*Cameron*, 806 F.2d at 388-89; *see Gordon*, 2012 WL 1068023, at *5 (quoting *Cameron*, 806 F.2d at 388-89).

Indeed, there is compelling logic behind this application of the conviction defense. Society's interest in apprehending criminals, as recognized in *Cameron*, justifies the application of the conviction defense to multiple-arrest situations. If society compromises its interest in apprehending criminals and allows defendants, in effect, to avoid prosecution for crimes they might have committed by pleading guilty to a single charge in satisfaction of others, so too should the individual defendant be required to compromise his right to vindicate his liberty interest by foregoing his false arrest claim. In other words, the criminal defendant who is granted the benefit of not being fully prosecuted for all of his crimes should not be allowed to sue the government later for giving him that break. *Accord DeVito v. Barrant*, No. 03–CV–1927, 2005 WL 2033722, at *4 (E.D.N.Y. Aug. 23, 2005) (noting the danger of discouraging the

government from entering into plea agreements if plaintiffs were allowed to bring false arrest claims on charges that were dropped pursuant to the plea agreement).

This is not to say that there will not be situations where it would be inappropriate to find that a defendant's guilty plea establishes probable cause for multiple arrests. One can imagine a scenario where a defendant is unlawfully arrested numerous times, but still decides to plead guilty "in satisfaction" of all charges, even if it means giving up the right to sue for false arrest later, because to preserve that right, the defendant would have to risk convictions on multiple charges, as well as bear the expense of prosecution and possibly be detained pending trial. It seems unlikely that *Cameron* intended to endorse this more extreme Hobbesian choice.[24]

However, such an extreme situation is not present here, and the Court has no difficulty finding that Plaintiff's disorderly conduct plea, which disposed of all charges in his then-pending Indictment, including the charges from the October Arrest, bars his false arrest claims based on both the October and December Arrests.[25] Accordingly, the Court grants Defendants' motion to

---

[24] Indeed, the concurrence in *Kent* expressed such a concern that broad application of *Cameron* would incentivize improper police tactics, and suggested, in *dictum*, that the conviction defense *only* be applied where the defendant pled guilty to the same crime for which he was arrested and not a lesser charge. The Honorable Jon O. Newman wrote in his concurrence: "if the defense of conviction were not limited to conviction of the crime for which the arrest was made, an arresting officer, anticipating ultimate conviction for a minor offense, could with impunity arrest for major charges that might sometimes subject the person arrested to prolonged pretrial detention." 312 F.3d at 578 (suggesting that "prosecutors consenting to reduce criminal charges in exchange for a defendant's plea should consider including in their agreements at least a settlement, and sometimes a complete release, of related civil liability claims against law enforcement officers."). While the scenario posited by Judge Newman is arguably implicated here, the Court finds that the post-*Kent* decisions in this Circuit have not followed the rule proposed in his concurrence, and that, as discussed above, a more expansive reading of *Cameron* is justified. *See*, *e.g.*, *Hope*, 2010 WL 331678, at *5 n.4 (rejecting plaintiff's argument in false arrest case that *Cameron* only applies where the charge for which plaintiff was convicted "is exactly the same charge for which he was arrested", because "Plaintiff's reading of *Cameron* would eviscerate the common law conviction defense entirely.").

[25] The Court's application of the conviction defense to the October Arrest to find that there was probable cause for that arrest is not inconsistent with the collateral estoppel doctrine,

dismiss Plaintiff's false arrest claim against both P.O. Lewis and P.O. Canale, the latter of which is also being dismissed on the basis of collateral estoppel.

### B. Unreasonable Search and Seizure

"[V]ictims of unreasonable searches or seizures may recover damages directly related to the invasion of their privacy—including (where appropriate) damages for physical injury, property damage, injury to reputation," and related damages. *Cabral v. City of New York*, 662 F. App'x 11, 13 (2d Cir. 2016) (summary order) (quoting *Townes v. City of New York*, 176 F.3d 138, 148 (2d Cir. 1999)). However, the U.S. Supreme Court has also noted that, "[i]n order to recover compensatory damages [based on an allegedly unreasonable search], the § 1983 plaintiff must prove not only that the search was unlawful, but that it caused him actual, compensable injury, which, we hold today, does *not* encompass the 'injury' of being convicted and imprisoned." *Heck*, 512 U.S. at 487 n.7 (citing *Memphis Community School Dist. V. Stachura*, 477 U.S. 299, 308 (1986)).

The Court has already found Plaintiff is collaterally estopped from arguing that there was no probable cause for the December Arrest and search. His unreasonable search claim against P.O. Canale is therefore dismissed.

The Court has also found that, pursuant to the conviction defense, there was probable cause for Plaintiff's arrest in October 2012, which would apply as well to the search conducted by P.O. Lewis at that time. Furthermore, Defendants contend that Plaintiff's unreasonable

---

despite Judge Margulis's finding of no probable cause with respect to the October Arrest. The conviction defense and collateral estoppel are separate and independent doctrines that do not rise or fall together, in large part, because the conviction defense relies upon a purely legal finding of probable cause that is not based in fact. *See Johnson*, 551 F. App'x at 15 (guilty plea establishes probable cause for arrest as a matter of law); *see also Cameron*, 806 F.2d at 381 (finding that false arrest claim was not barred based on principles of collateral estoppel but barred by conviction defense).

search claim as to P.O. Lewis must be dismissed because Plaintiff does not allege that he suffered compensable injury resulting from P.O. Lewis's search of him in connection with the October Arrest.[26] The Court agrees. No facts are alleged in the Complaint against P.O. Lewis that could be construed as injury caused by the search that took place in October 2012. Therefore, Plaintiff is both barred by the conviction defense from asserting an unreasonable search claim against P.O. Lewis and, in any event, has failed to state such a claim against P.O. Lewis.

Accordingly, the Court grants Defendants' motion to dismiss Plaintiff's unreasonable search and seizure claims as to both P.O. Lewis and P.O. Canale.

### C.    Malicious Abuse of Process

Plaintiff asserts an abuse of process claim only as to P.O. Canale. (*See* Compl. II.) The Court looks to State law for the elements of a Section 1983 abuse of process claim. *Mangino v. Inc. Village of Patchogue*, 808 F.3d 951, 958 n.5 (2d Cir. 2015) (citing *Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir. 1994) and *Savino v. City of New York*, 331 F.3d 63, 76–77 (2d Cir. 2003)). Under New York law, "'a malicious abuse-of-process claim lies against a defendant who (1) employs regularly issued legal process to compel performance or forbearance of some act (2) with the intent to do harm without excuse of justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process.'" *Savino*, 331 F.3d at 76 (quoting *Cook*, 41 F.3d at 80); *see also Hoffman v. Town of Southampton*, 523 F. App'x 770, 771 (2d Cir. 2013) (summary order) (citing *Savino*, 331 F.3d 63). To plead a collateral objective, a plaintiff must plausibly plead not that defendant acted with an "improper motive," but rather for an "improper

---

[26] Notably, Plaintiff fails to respond to this argument. The Court observes that while Plaintiff alleged in his Complaint against P.O. Canale that he was not arraigned until almost twenty-four hours after he was arrested (Compl. II ¶ 14), his Complaint against P.O. Lewis does not include such an allegation (*see* Compl. I).

purpose." *Savino*, 331 F.3d at 77. "[A plaintiff] must claim that [the defendant] aimed to achieve a collateral purpose beyond or in addition to his criminal prosecution." *Id.*

Here, Plaintiff does not allege sufficient facts to state an abuse of process claim. Plaintiff merely parrots the elements of this cause of action: "The arrest of plaintiff by the defendant CANALE was with the purpose of obtaining a collateral objective outside the legitimate ends of justice. The defendant officer acted with intent to do harm to plaintiff without excuse or justification . . . ." (Compl. II ¶¶ 31–32.) Such conclusory allegations are not enough to overcome a 12(b)(6) motion. *See Iqbal*, 556 U.S. at 668 ("Threadbare recitals of the elements of a cause of action . . . do not suffice."); *see, e.g., Barmapov*, 2011 WL 32371, at *5 ("Such conclusory allegations do not provide the Court with any means to assess Defendant's motive for making the arrest."); *Burroughs v. Dorn*, No. 13–CV–3609, 2013 WL 3820673, at *6 (E.D.N.Y. Jul. 22, 2013) (dismissing an abuse-of-process claim where plaintiff "offer[ed] nothing more than conclusory statements as to [the] allegation that [a defendant] intended to do harm without justification"); *Bouche v. City of Mount Vernon*, No. 11 Civ. 5246, 2012 WL 987592, at *7 (S.D.N.Y. Mar. 23, 2012) ("Plaintiff has not pled that the officers sought to achieve a collateral objective beyond or in addition to an arrest of a suspect and to close a homicide case"); *Cabble v. City of New York*, 04 Civ 9413, 2010 WL 1222035, at *4 (S.D.N.Y. Mar. 29, 2010) (dismissing an abuse-of-process claim where plaintiff only alleged that prosecutors pursued the case in order to "avoid[ ] negative press coverage, which may have resulted from voluntary dismissal of charges against [the plaintiff] and/or speedier release from detention").

Accordingly, Defendants' motion to dismiss Plaintiff's abuse of process claim against P.O. Canale is granted.[27]

### D.     Equal Protection Claim

"The Equal Protection Clause requires that the government treat all similarly situated people alike." *Garanin v. New York City Hous. Pres. & Dev.*, ---Fed. Appx---, 2016 WL 7435914, at *1 (2d Cir. 2016) (quoting *Harlen Assocs. v. Inc. Vill. of Mineoloa*, 273 F.3d 494, 499 (2d Cir. 2001)); *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Courts have generally recognized three types of equal protection violations: (1) a facially discriminatory law; (2) a facially neutral law that is applied in a discriminatory manner; and (3) a facially neutral statute that has an adverse effect and was motivated by discriminatory animus. *Pyke v. Cuomo*, 258 F.3d 107, 109 (2d Cir. 2001).

In light of the minimal factual allegations in the two Complaints, the Court takes into consideration Plaintiff's argument in his moving papers and interprets the claim as an equal protection claim regarding selective enforcement of the stop and frisk policy. (*See* Dkt. 20 at 8 (citing Compl. I ¶ 9–11 and Compl. II ¶ 38–40).) To state a claim for selective enforcement, a plaintiff must plead that "(1) he was treated differently from other similarly-situated individuals; and (2) the differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercises of constitutional rights, or malicious or bad faith intent to injure a person." *Skehan v. Vill. of Mamaroneck*, 465 F.3d 96, 110 (2d Cir. 2006)

---

[27] P.O. Canale also argues that the abuse of process claim should be dismissed because there was probable cause for Plaintiff's December Arrest. However, Defendant fails to note that there is a split in the Second Circuit as to whether probable cause is a defense against abuse of process claims. *See Mangino*, 808 F.3d at 958–60 (2d Cir. 2015) ("There has been considerable confusion within our Circuit regarding whether probable cause is a complete defense to a claim of abuse of process under New York law  . . . . We need not, and do not, resolve this confusion here . . . ."). As in *Mangino*, this Court need not "resolve this confusion" either, because Plaintiff's abuse of process claim is being dismissed as insufficiently pled.

(citation and quotation marks omitted), *overruled on other grounds by Appel v. Spiridon*, 531 F.3d 138, 140 (2d Cir. 2008); *see also Butler v. City of Batavia*, 323 F. App'x 21, 22 (2d Cir. 2009). A plaintiff need not "'show a better treated, similarly situated group of individuals of a different race in order to establish a claim of denial of equal protection' where plaintiff has alleged 'an express racial classification, or alleges that a facially neutral law or policy has been applied in an intentionally discriminatory race-based manner, or that a facially neutral statute or policy with an adverse effect was motivated by discriminatory animus.'" *Vilkhu v. City of New York*, No. 06–CV–2095, 2008 WL 1991099, at *5 (E.D.N.Y. May 5, 2008) (quoting *Pyke*, 258 F.3d at 110).

Plaintiff generally asserts that he was "deprived of his Fourteenth Amendment right to equal protection of the laws." (Compl. I ¶ 25(b), Compl. II ¶ 26(b).) Then, he further explains that "his October arrest was pursuant to the stop and frisk policy directed at young black men by what was official policy of the City of New York." (Dkt. 20 at 8 (citing Compl. I ¶ 9–11 and Compl. II ¶ 38–40).) In the Complaint against P.O. Lewis, Plaintiff alleges that he is an "African-American citizen of the United States."[28] (Compl. I ¶ 4.) At this stage, the Court finds that Plaintiff has sufficiently alleged an equal protection claim against Lewis based on the October Arrest. *See Aikman v. Cty. of Westchester*, 491 F. Supp. 2d 374 (S.D.N.Y. 2007) ("He has alleged that a 'facially neutral law'—the New York Vehicle and Traffic Code—'has been applied in an intentionally discriminatory race-based manner.' At this stage, this is all he is obligated to do."); *Wright v. Yacovone*, No. 5:12–cv–27, 2012 WL 5387986, at *20 (D. Vt. Nov. 2, 2012) (finding plaintiff's claim sufficient to survive a motion to dismiss where the plaintiff

_____

[28] The Court also notes that, to the extent Defendants urge the Court to consider the Suppression Order, the Court finds that Judge Margulis's conclusion that P.O. Lewis lacked probable cause to stop, search, and arrest Plaintiff in October 2012 provides further support for Plaintiff's equal protection claim.

alleged that the defendants engaged in intentional discrimination by treating him differently in applying facially neutral laws because of their mistaken belief that he was an "Arab").

In contrast, Plaintiff has failed to allege facts to support a plausible equal protection claim against P.O. Canale. Plaintiff has not alleged that he was subjected to the traffic stop, search, or arrest because of his membership in a protected class; Plaintiff does not even allege what protected class he belongs to in the Complaint against P.O. Canale. Thus, there is no basis to find that Plaintiff has adequately pled an equal protection claim against P.O. Canale. [29]

Accordingly, Defendants' motion to dismiss Plaintiff's equal protection claim is denied as to P.O. Lewis, but granted as to P.O. Canale.

### E.    Due Process Claim

Under the Due Process Clause of the Fourteenth Amendment, no State shall "deprive any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV, § 1. The Due Process Clause was "intended to secure the individual from the arbitrary exercise of the powers of government." *Daniels v. Williams*, 474 U.S. 327, 331 (1986) (quoting *Hurtado v. California*, 110 U.S. 516, 527 (1884)). Plaintiff clarified in his Supplemental briefing that his due process claim is based on his allegation that Defendants fabricated evidence in violation of his constitutional right to liberty. (Dkt. 25 at 2–3.) "It is firmly established that a constitutional right exists not to be deprived of liberty on the basis of false evidence fabricated by a

---

[29] Although Plaintiff points to paragraphs 38–40 in arguing that enough facts have been alleged in Complaint II, those paragraphs have nothing to do with the proposition that the "October arrest was pursuant to the stop and frisk policy directed at young black men by what was official policy of the City of New York." Those paragraphs state that "the charges were [sic] against plaintiff were terminated in his favor," that "Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the Complaint . . . ." and that the City of New York is liable under *Monell*. (Compl. II ¶ 38–40.) Moreover, Plaintiff was arrested by P.O. Canale in December 2012 and was riding in a vehicle as a passenger at the time the car was subjected to a traffic stop. (*See* Compl. II ¶ 6.)

government officer." *Zahrey v. Coffey*, 221 F.3d 342, 355 (2d Cir. 2000); *see Zahrey v. City of New York*, No. Civ. 98–4546, 2009 WL 1024261, at *8 n.14, *9–10 (S.D.N.Y. Apr. 15, 2009) (noting that "evidence fabrication serves to both improperly charge and/or arrest a plaintiff as well as unfairly try him" and characterizing plaintiff's evidence fabrication claim as a claim for violation of procedural due process under the Fifth, Sixth, and Fourteenth Amendments). "When a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial, and the harm occasioned by such unconscionable action is redressable in an action for damages under 42 U.S.C. § 1983." *Ricciuti v. N.Y. City Transit Auth.*, 124 F.3d 123, 130 (2d Cir 1997); *see also Jocks v. Tavernier*, 316 F.3d 128, 138 (2d Cir. 2003) (holding that fabrication of evidence by police is actionable under § 1983).

To state a claim of fabrication of evidence, a plaintiff must allege that "an (1) investigating official (2) fabricat[ed] information (3) that is likely to influence a jury's verdict, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of life, liberty, or property as a result." *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 279 (2d Cir. 2016) (citing *Ricciuti*, 124 F.3d at 130 and *Jocks*, 316 F.3d at 138).

Here, there are sufficient, non-conclusory allegations of fabrication of evidence against P.O. Canale. Plaintiff alleged that P.O. Canale knowingly gave the prosecutor false information that the gift cards were recovered from the open glove compartment of the vehicle—when, in fact, as P.O. Canale knew, the cards were recovered from the trunk of the car, which was being driven by someone other than Plaintiff—in order to create the impression that there was probable cause arrest Plaintiff, who was only a passenger. (Compl. II ¶¶ 8, 12, 15.) He also alleged that P.O. Canale included such false information in the criminal court complaint and police reports

and that the arrest "caused [Plaintiff] not to be arraigned until almost twenty four (24) hours [later.]" (*Id.* ¶¶ 12, 14, 15.) Taking these allegations as true—*i.e.*, that the content of the police report, criminal complaint, and information P.O. Canale gave to the prosecutor contained false information and that P.O. Canale knowingly made such false assertions—the Court finds that Plaintiff has adequately pled his fabrication of evidence claim against P.O. Canale. *See Bristol v. Queens Cty.*, No. CV 09–5544, 2013 WL 1121264, at *13 (E.D.N.Y. Feb. 27, 2013) (finding that plaintiff sufficiently alleged a fabrication of evidence claim by specifically alleging that particular documents were falsified, that such falsified documents were forwarded to the prosecutor, and that he was subject to "unreasonable unconstitutional detention"), *report & recommendation adopted by* No. 09–CV–5544, 2013 WL 1120895 (E.D.N.Y. Mar. 18, 2013); *Pizarro v. City of New York*, No. 14–CV–507, 2015 WL 5719678 (E.D.N.Y. Sept. 29, 2015) (finding complaint sufficiently alleged a claim of violation of the plaintiff's right to a fair trial where he alleged that defendants coerced him to confess, that plaintiff wrote down the narrative dictated by the defendants, that the defendants forwarded the information to prosecutors, and that plaintiff was remanded after his arraignment).

However, the Court finds that the allegations relating to Plaintiff's fabrication of evidence claim against P.O. Lewis are insufficient and merely conclusory. The Complaint against P.O. Lewis fails to specify what evidence was falsified or how P.O. Lewis falsified any evidence. Plaintiff only alleges that "[t]he plaintiff [sic] lacked probable cause to charge plaintiff with the aforesaid crimes but the defendant nevertheless caused the plaintiff to be prosecuted in Queens County Criminal Court and the Supreme Court of the County of Queens" (Compl. I ¶ 14), and that "the charges made against plaintiff was [sic] falsely made by [P.O. Lewis] without probable cause, and the subsequent prosecution was also initiated by said defendant with malice

and without probable cause" (Compl. I ¶ 17). Such conclusory recitations of the elements of a fabrication of evidence claim are inadequate to survive a 12(b)(6) motion. *See Abdul-Rahman v. City of New York*, No. 10 Civ. 2778, 2012 WL 1077762, at *12 (E.D.N.Y. Mar. 30, 2012) ("[T]he Court dismisses plaintiff's claim because he has presented only the most conclusory and generalized allegations, failing to specify in what way the statements . . . were false or even in what material respect the charges against him were false.").

Accordingly, the Defendants' motion to dismiss Plaintiff's Due Process fabrication of evidence claim is granted as to P.O. Lewis, but denied as to P.O. Canale.

**F.** *Monell* **Claim**

A municipality may be liable under Section 1983 if a municipal "policy or custom" causes a "deprivation of rights protected by the Constitution." *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690–91 (1978); *Jones v. Town of E. Haven*, 691 F.3d 72, 80 (2d Cir. 2012). For a *Monell* claim to survive a motion to dismiss, a plaintiff must allege "sufficient factual detail" and not mere "boilerplate allegations" that the violation of plaintiff's constitutional rights resulted from the municipality's custom or official policy. *Plair v. City of New York*, 789 F. Supp. 2d 459, 469 (S.D.N.Y. 2011) (collecting cases); *Zherka v. City of New York*, 459 F. App'x 10, 12 (2d Cir. 2012) ("[T]he mere assertion that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference." (citation and internal quotation marks omitted)).

To the extent that Plaintiff asserts a claim against the City for false arrest and illegal search, the *Monell* claim must be dismissed as Plaintiff has not alleged any facts to suggest that his arrest was the result of a City policy or practice. While the Complaints recite the elements of the *Monell* claim alleging that the City "hired and retained incompetent and unfit police officers," "failed to exercise care instructing police officers," and "failed to adequately train and

supervise their employees," such boilerplate allegations and legal conclusions are insufficient to survive a 12(b)(6) motion. *Iqbal*, 556 U.S. at 668; *Twombly*, 550 U.S. at 555; *Johnson v. N. Y. City Police Dep't*, 651 F. App'x 58, 61 (2d Cir. 2016).

Accordingly, Defendants' motion as to the *Monell* claim is granted.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is granted as to: (1) Plaintiff's false arrest, unreasonable search and seizure, abuse of process, and equal protection claims against P.O. Canale; (2) Plaintiff's false arrest, unreasonable search and seizure, and due process claims against P.O. Lewis; and (3) Plaintiff's municipal liability claim against the City. Defendants' motion to dismiss is denied as to Plaintiff's equal protection claim against P.O. Lewis relating to the October Arrest and Plaintiff's due process claim against P.O. Canale relating to the December Arrest.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: March 31, 2017
        Brooklyn, New York